1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Archer Western Contractors, LTD, | ) | Case No. CV 14-3041 DMG (MANx) |
| | ) | |
| Plaintiff, | ) | **ORDER RE:  DEFENDANT** |
| v. | ) | **NATIONAL UNION FIRE** |
| | ) | **INSURANCE COMPANY'S** |
| Liberty Mutual Fire Insurance Co. | ) | **MOTION FOR SUMMARY** |
| and National Union Fire Insurance Co., | ) | **JUDGMENT OR PARTIAL** |
| | ) | **SUMMARY JUDGMENT [44]** |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

On August 25, 2014, Plaintiff Archer Western Contractors ("AWC") filed a Second Amended Complaint ("SAC") against Liberty Mutual Insurance Company ("Liberty Mutual")[1] and National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") for:  (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing;[2] and (3) declaratory relief.  [Doc. # 37.]  On

---

[1] On February 6, 2015, the parties stipulated to dismiss all claims against Liberty Mutual.  [Doc. # 46.]

[2] AWC has voluntarily dismissed its third cause of action for breach of the implied covenant of good faith and fair dealing.  Opp. at 4.

September 9, 2014, National Union filed an answer to the SAC which included a counter-claim for declaratory judgment and a cross-claim for declaratory judgment and equitable contribution.  [Doc. # 39.]

On January 14, 2015, National Union filed the instant motion for summary judgment or partial summary judgment.  [Doc. # 44.]  On February 6, 2015, AWC filed an opposition ("Opp.") [Doc. # 48] and on February 13, 2015, National Union filed a reply ("Reply").  [Doc. # 57.]  A hearing on this matter was held on February 27, 2015.  Having duly considered the parties' written submissions and counsel's oral argument, the Court **GRANTS** National Union's motion for summary judgment.

# I.
# FACTUAL BACKGROUND

**A.    The National Union Policy**

AWC is a general contractor which is or has been insured by both National Union and Liberty Mutual.  Statement of Genuine Disputes of Material Fact in Opposition to National Union Fire Insurance Company's Statement of Uncontroverted Facts and Conclusions of Law ("GDMF") at ¶¶ 7, 15, 35.  [Doc. # 50.]  AWC's National Union policy was effective October 18, 2009 through December 1, 2014.  *Id*. at ¶ 15; Mastromateo Decl., Ex. 1 at 16, Commercial Umbrella Liability with CrisisResponse ("National Union Policy").  [Doc. # 44-6.]

The National Union Policy provides:

A.    We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury or Property Damage to which this insurance applies assumed by the Insured under an Insured Contract.

The amount we will pay for damages is limited as described in Section IV, Limits of Insurance.

B.    This policy applies, only if:

    1.    the Bodily Injury or Property Damage is caused by an Occurrence that takes place anywhere, and the Bodily Injury or Property Damage occurs during the Policy Period; and

    2.    the Personal Injury and Advertising Injury is caused by an Occurrence that takes place anywhere arising out of your business, but only if the Occurrence was committed during the Policy Period.

National Union Policy at ¶ I.A.

Section V., **EXCLUSIONS** to the National Union Policy, provides:

D.    Damage to Impaired Property or Property Not Physically Injured

This insurance does not apply to Property Damage to Impaired Property or property that has not been physically injured, arising out of:

    1.    a defect, deficiency, inadequacy or dangerous condition in Your Product or Your Work; or

    2.    a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

National Union Policy at ¶ V.D ("Impaired Property Exclusion").

E.    Damage to Property

This insurance does not apply to Property Damage to:

    5.    that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the Property Damage arises out of those operations; or

6.     that particular part of any property that must be restored, repaired, or replaced because Your Work was incorrectly performed on it.

National Union Policy at ¶¶ E(5), (6) ("Business Risks Exclusions").

Section VII, **DEFINITIONS**, provides that:

L.     **Impaired Property** means tangible property, other than Your Product or Your Work, that cannot be used or is less useful because:  1. it incorporates Your Product or Your Work that is known or thought to be defective, deficient, inadequate or dangerous; or 2. you have failed to fulfill the terms of a contract or agreement; If such property can be restored to use by:  1. the repair, replacement, adjustment, or removal of Your Product or Your Work or 2. your fulfilling the terms of the contract or agreement.

Y.     **Property Damage** means:

1.     physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it; or 2.  loss of use of tangible property that is not physically injured.  All such loss of use will be deemed to occur at the time of the Occurrence that caused it.

DD.     **Your Product** means:

1.     any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:

a.     you;

b.     others trading under your name; or

c.     person or organization whose business or assets you have acquired; and

2.      containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

EE.   **Your Work** means:

1.      work or operations performed by you or on your behalf; and 2. materials, parts or equipment furnished in connection with such work or operations.

National Union Policy at ¶ VII.L, Y, DD, EE.

## B.   The Water Authority Project and Contract

In March of 2006, the San Diego County Water Authority ("Water Authority") entered into a contract with AWC for the general construction of an emergency system of reservoirs, pipelines, and pumping stations intended to provide water to the San Diego region in the event of an interruption in imported water deliveries ("Project"). Declaration of John Mastrantonio filed in Support of National Union's Motion for Summary Judgment (Mastrantonio Decl.") [Doc. # 44-5], Ex. 3, Contract for Olivenhain/Hodges ESP/Pumped Storage Projects Pump House and Inlet/Outlet Structure Specification 554 ("Contract").  [Doc. # 44-8.]

AWC (which is described as "Contractor" [3] in the Contract) agreed "to provide, complete and finished [sic], the Work that comprises the Olivenhaim-Hodges ESP/Pumped Storage Projects Pump House and Inlet/Outlet Structure, Specification 554." *Id*. at ¶ 1.  AWC's responsibilities under the Contract included "construction of the pump house, tailrace tunnel, inlet/outlet structure, various other sitework improvements, and the installation of the owner furnished turbine/generators and other major electrical and mechanical equipment in accordance with the Contract Documents."  Mastrantonio Decl., Ex. 5, Conformed Specifications of Olivenhain-Hodges ESP/Pumped Storage Projects Pump House and Inlet/Outlet Structure Specification 554 ("Spec. 554") at ¶ 5.

---

[3] National Union asserts that AWC was a "general contractor" responsible for the project as a whole.  MSJ at 3.  AWC does not dispute this characterization, and refers to itself as a "general contractor" in the opposition, as well as citing case law regarding general contractors.  Opp. at 2, 9-11, 12.

1  [Doc. # 44-10.]  The Contract also required AWC to indemnify the Water Authority for
2  liability arising out of the Project.  GDMF at ¶ 11.

3      The Water Authority filed a notice of completion of the Project on February 11,
4  2013 with the San Diego Recorder's office specifying that the Project had been
5  completed on February 8, 2013.  GDMF at ¶ 41.

6  **C.     The Water Authority Action**

7      **1.     The Water Authority Complaint**

8      On April 29, 2011, the Water Authority filed a complaint (the "Underlying
9  Action") alleging that AWC materially breached its contract by:

10         (1) failing to perform work within the time required, (2) performing
11         defective work, including but not limited to the improper assembly and
12         installation of various components that were incorporated into the Project
13         and physical damage to parts of the turbine generator unit 1; and (3) failing
14         to defend and indemnify the WATER AUTHORITY from and against all
15         liabilities, including without limitation all claims, losses, damages, penalties,
16         fines and judgments, associated investigation and administrative expenses,
17         and defense costs, regardless of the nature, type or cause, arising out of or in
18         connection with the performance of the ARCHER Contract.

19  Request for Judicial Notice in Support of National Union's Motion for Summary
20  Judgment ("RJN"), Ex. 1 ("Water Authority Complaint") at ¶ 60.  [Doc. # 44-17.]

21         The Complaint further alleged that:
22         ARCHER carelessly and negligently manufactured, constructed, assembled,
23         inspected, provided and/or oversaw the improper construction of the Project,
24         including but not limited to the improper assembly and installation of
25         various components that were incorporated into the Project.

26  *Id.* at ¶ 67.

27

28

2.      **The Water Authority Interrogatory Responses**

During litigation of the Underlying Action, the Water Authority asserted that AWC caused damage to the turbine/generator units, water seepage in the pump house, and a "Unit 1 Leak."  Mastrantonio Decl., Ex. 6, Plaintiff San Diego County Water Authority's Responses to Defendant Archer Western Contractors, LTD's Form Interrogatories, Set One ("Water Authority Interrogatory Responses") at No. 7.  [Doc. # 44-11][4]  The Water Authority alleged that "[t]he most significant of these events stems from the binding of turbine/generator unit 1 ('Unit 1') that occurred during its rotational check."  *Id*.  The Water Authority also alleged that turbine/generator Units 1 and 2 were constructed incorrectly and as a result needed to be disassembled, evaluated, repaired, and then reassembled.  *Id*.  The Project was allegedly damaged by excessive moisture and leakage in the pump house arising out of AWC's faulty workmanship.  *Id*.

3.      **The Settlement**

AWC settled the claims brought by the Water Authority in the Underlying Action on or around March 7, 2014.  SAC at ¶ 2.  Under the Settlement Agreement, AWC agreed to pay the Water Authority $6.6 million.  *Id*., GDMF at ¶ 79.  Liberty Mutual

---

[4] AWC objects to the admission of the Water Authority Interrogatory Responses on the basis of lack of authentication, hearsay, and lack of foundation.  Evidentiary Objections of Plaintiff and Counter-Defendant AWC to Declaration of John Mastrantonio ("Evid. Objections") at ¶ 3.  [Doc. # 51.].  AWC contends that "[t]he responses' lack of reliability is evident on their face, as several responses state expressly that the issues are complex, investigation and discovery was ongoing and the Water Authority was reserving its right to change its response."  *Id*.

Here, the dispute is not whether AWC was ultimately liable for the claims resolved by the settlement, but which claims and types of alleged damages the settlement addressed.  The evidence is admitted for the existence of the document and its allegations, and not for the truth of the allegations.  While AWC is correct that Mastrantonio cannot authenticate these documents on his own, National Union could potentially bring witnesses who could authenticate this document at trial.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents") (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir.2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).  The Water Authority Interrogatory Responses are admitted to show the types of damages asserted by the Water Authority.

agreed to pay $2 million toward the settlement.  *Id.* at ¶ 80.  As part of the Settlement Agreement, the Water Authority agreed to pay AWC the balance of its contract in the amount of $4.6 million.  *Id.* at ¶ 81.

AWC alleges that National Union has breached its contractual obligations under the National Union policy by failing and refusing to indemnify AWC for the sums paid by AWC to settle the claims in the Underlying Action in excess of the applicable underlying limits of the Liberty Policy.  SAC at ¶ 37.

## II.
## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial.").  "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most

favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

## III.
## JUDICIAL NOTICE

National Union requests that this Court take judicial notice of:  (1) the complaint in the Underlying Action filed by the San Diego County Water Authority against AWC and others in the matter captioned *San Diego Water Authority v. MWH Americas, Inc., et al.*, Case No. 37-2011-00090504-CU-BC-CTL (the "Water Authority Complaint"), filed on April 29, 2011 and (2) the San Diego Water County Authority Notice of Completion filed on February 11, 2013 with the San Diego Recorder's office.  RJN, Exs. 1 and 2.

A Court may take judicial notice of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from a source whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b)(2).  Judicial proceedings and public records are a proper subject of judicial notice if they are relevant to the proceedings at hand.  *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 (9th Cir. 2006) (judicial notice may be taken of public records).

Generally, the existence and contents of such documents may be judicially noticed, but a court should not take judicial notice of the truth of the contents unless those facts are beyond dispute.  *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1152 (C.D. Cal. 2005); *San Luis v. Badgley*, 136 F. Supp. 2d 1136, 1146 (E.D. Cal. 2000) (a court "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the litigation, but rather to establish the fact of such litigation and related filings").  The Court takes judicial notice of the existence and contents of both documents requested, but not for the truth of the matters asserted in them.

# III.
## DISCUSSION

An insurer's duty to indemnify is independent of, and less expansive than, the duty to defend.  *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 287, 172 Cal. Rptr. 653 (2014)[5] ("The duty to defend is broader than the duty to indemnify."); *Anthem Electronics, Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002) (under California law, an insurer's duty to defend is broader than its duty to indemnify). The duty to defend "extends to claims that are merely potentially covered," while the duty to indemnify "runs only to claims that are actually covered by the policy." *Crawford v. Weather Shield Mfg. Inc.*, 44 Cal. 4th 541, 547, 79 Cal. Rptr. 3d 721 (2008).

"[I]t is well settled that where a case settles prior to trial, the duty to indemnify must be determined on the basis of the settlement, *i.e.*, the undisputed facts set forth in the underlying complaint and those known to the parties." *Sentry Select Ins. Co. v. Royal Ins. Co. of Am.*, 481 F.3d 1208, 1215 (9th Cir. 2007) (internal citations and quotation marks omitted).  "[W]hen a case settles, the insurer's obligation to pay and the determination of coverage must be based upon the facts inherent in the settlement." *Texas Farmers Ins. Co. v. Lexington Ins. Co.*, 380 F. App'x 604, 607 (9th Cir. 2010) (internal citation and quotation marks omitted); *Foremost Ins. Co. v. Fick*, 930 F.2d 27 (9th Cir. 1991) (plaintiff has burden of proving coverage under insurance policy when seeking reimbursement for a settlement payment).  An insurer has no duty to indemnify a settlement of damages from claims that would not have been covered by the policy.  *See Everett Associates, Inc. v. Transcon. Ins. Co.*, 159 F. Supp. 2d 1196, 1207 (N.D. Cal. 2001), *aff'd*, 35 F. App'x 450 (9th Cir. 2002) (assessing whether the damages that constituted a settlement would have actually been covered by policy's indemnity clause); *Am. Med. Response Nw., Inc. v. ACE Am. Ins. Co.*, No. 3:09-CV-01196-JO, 2014 WL 3420613 (D. Or. July 10, 2014) (for insurer to have duty to indemnify settlement

---

[5] Both parties agree that California law applies to this case.

payment, the basis for the settlement must be a covered claim within the terms of the policy).

Generally, where a plaintiff has not alleged that the settlement involved matters outside those raised by the complaint, the court looks to the complaint to determine whether the insurer would have had a duty to indemnify such claims. *See, e.g.*, *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081, 846 P.2d 792, 795 (1993), *as modified on denial of reh'g* (May 13, 1993) (insurance company's duty usually determined "by comparing the allegations of the complaint with the terms of the policy"); *Enron Oil Trading & Transp. Co. v. Underwriters of Lloyd's of London Under Policy No. 552/020129100*, 47 F. Supp. 2d 1152, 1161 (D. Mont. 1996), *aff'd in part, rev'd in part sub nom. Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526 (9th Cir. 1997) (court examined complaint in light of the coverage of governing policy where plaintiff did not allege that settlement involved matters outside those raised by the complaint); *Texas Farmers*, 380 F. App'x at 607 (all claims existing at the time of the settlement considered to determine insurer's liability).

The Water Authority asserted that AWC's defective work resulted in damage to one of the turbine/generator units, the need to disassemble and inspect a second turbine/generator unit in order to prevent similar problems and damages, and leakage in the pump house, which caused damaged to equipment and structures inside the pump house, including the gypsum wall board, metal stud framing, and various electrical equipment inside the pump house. Water Authority Interrogatory Responses at No. 7.

Although AWC correctly points out that there is a genuine dispute as to whether it would have been liable for these claims had the Underlying Action proceeded to trial, AWC does not contend that the settlement involved matters outside those claims raised by the Water Authority Complaint. The salient question is not whether AWC's work was actually defective, but whether the National Union policy would have covered the damages had the Water Authority prevailed in its suit against AWC.

-11-

"While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538 (1992). "If contractual language is clear and explicit, it governs." *Id.*; *see also St. Paul Fire & Marine Ins. Co. v. Coss*, 80 Cal. App. 3d 888, 896, 145 Cal. Rptr. 836, 841 (Ct. App. 1978) ("An insurance policy is a contract, and when the terms are plain and unambiguous, it is the duty of the court to hold the parties to such contract.").

## A.   Property Damage Coverage Applies

The National Union Policy covers damages resulting from Property Damage, which is defined as any physical injury to tangible property, including all resulting loss of use of that property or loss of use of tangible property that is not physically injured. National Union Policy at ¶¶ I.A, ¶ VII.Y.  The Underlying Action primarily alleges damage to one of the turbine/generator units and leakage to the pump house and structures and equipment inside the pump house.  Both are tangible property belonging to the Water Authority, and both were damaged, resulting in the loss of use of that property. This amounts to "property damage" under the meaning of the National Union Policy. Indeed, this Court already determined at the motion to dismiss stage that "AWC has sufficiently alleged that 'property damage' occurred as required for coverage under the National Union Policy."  Order Granting Defendant's Motion to Dismiss ("MTD Order") at 4-5.  [Doc. # 36.]  Nothing in the current record alters that determination.

## B.   The Impaired Property Exclusion

The National Union Policy does not cover Property Damage to Impaired Property, which is defined as any tangible property, *other than Your Product or Your Work*, that cannot be used or is less useful because (1) it incorporates Your Product or Your Work that is known or thought to be defective, deficient, inadequate, or dangerous or (2) you have failed to fulfill the terms of a contract or agreement, if such property can be restored to use by (1) the repair, replacement, adjustment, or removal of Your Product or Your

-12-

Work or (2) your fulfilling the terms of the contract agreement.  National Union Policy at ¶ V.D (emphasis added).

"Your Product" is defined as (1) any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed by you, others trading under your name, or a person or organization whose assets you have acquired and (2) containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.  *Id*. at ¶ DD.  "Your Work" is defined as (1) work or operations performed by you or on your behalf; and (2) materials, parts or equipment furnished in connection with such work or operations.  *Id*. at ¶¶ EE.

In the case of a general contractor with expansive responsibility for a project, all of the work at the project is considered its work product.  *George F. Hillenbrand, Inc. v. Ins. Co. of N. Am.*, 104 Cal. App. 4th 784, 805, 128 Cal. Rptr. 2d 586 (2002) ("In the case of a general contractor, all the work at the project is considered its work product, whereas in the case of a subcontractor [], only its portion of the work . . . is the work product and damage to other parts of the project is considered damage to other property.")  The work product exclusion applies to both the work that fails and to the other, satisfactory work of the insured that is damaged by the work that fails.  *W. Employers Ins. Co. v. Arciero & Sons, Inc.*, 146 Cal. App. 3d 1027, 1029, 194 Cal. Rptr. 688, 689 (Ct. App. 1983).

In the case of a subcontractor, the "your work" exception is applied more narrowly.  In *McGranahan v. Ins. Corp. of NY*, an insured subcontractor had installed drywall in a housing complex.  544 F. Supp. 2d 1052, 1055 (E.D. Cal. 2008).  The drywall was allegedly negligently installed and required mold remediation, which included removal of the drywall, removing and cleaning fixtures such as cabinets, tubs, toilets, and light fixtures, removing exposed insulation, cleaning HVAC work ducts, and cleaning residual traces of the mold from the structure, including traces on floors, walls, ceiling, and ledges.  *Id*.  The court found that the "your work" exclusion did not apply, because "[t]he

evidence before the court indicates that some of the damage alleged . . . was to property other than the drywall." *Id.* at 1060.

Here, in contrast, AWC was the general contractor responsible for construction of the entire pump house and installation of both the turbine/generators and other major electrical and mechanical equipment.  Spec. 554 at ¶ 5.  All of the property damage alleged was to the turbine/generators, the pump house, and structures and equipment inside the pump house.  These all constitute "materials, parts or equipment" furnished in connection with "work or operations" performed by AWC.  Because all of the damages alleged were to materials, parts, or equipment built or furnished by AWC, and AWC had expansive responsibility for the Project, the damages are therefore encompassed by the "Your Product or Your Work" exception to the Impaired Property definition, and do not constitute Impaired Property under the meaning of the National Union Policy.  These damages are therefore not excluded from coverage on the basis of the Impaired Property exclusion.

**C.    The Business Risk Exclusions**

**1.    Exclusion E(5)**

The National Union Policy does not apply to Property Damage to "that particular part of real property" on which AWC or its contractors or subcontractors were performing operations if the Property Damage "arises out of these operations."  National Union Policy at ¶ E(5).

"An insurer relying on the exclusion is not entitled to summary judgment unless it proves all of the alleged damage was to the *particular part* of the real property on which the insured *was performing operations.*"  *C.O.D. Gas & Oil Co. v. Ace Am. Ins. Co.*, No. D042245, 2004 WL 1245759, at *5 (Cal. Ct. App. June 8, 2004) (internal citation omitted) (emphasis in original).  Courts have construed this exclusion to encompass only the specific work the insured is actually contracted to perform, particularly with regard to

-14-

subcontractors.  *See Roger H. Proulx & Co. v. Crest-Liners, Inc.*, 98 Cal. App. 4th 182, 119 Cal. Rptr. 2d 442 (2002), *as modified on denial of reh'g* (May 28, 2002).

In *Proulx*, a subcontractor was hired to install a waterproof tank in a 25-story commercial building.  98 Cal. App. 4th at 189.  The subcontractor hired a sub-subcontractor to install the waterproof liner of the tank.  *Id*.  The tank began to leak, causing damage to the tank itself and to various components of the building.  *Id*.  The subcontractor filed suit against the sub-subcontractor for installing the tank liner negligently, and the parties ultimately settled the claims.  *Id*. at 201.  The sub-subcontractor's insurer contended that various exclusions would have precluded coverage of the claims settled, including the exclusion for "property damage to that particular part of real property on which the insured . . . is performing operations if the property damage arises out of those operations."  *Id*. at 202. (internal quotation marks omitted).  The Court of Appeals found that this exclusion could not form the basis for summary judgment for the insurer, because the insurer failed to show that all of the damage suffered was to the tank liner that the subcontractor was hired to install.  *Id*. at 202-03 ("the evidence before the trial court indicated that at least some of the damage at issued involved property other than the tank liner").

In the case of a general contractor, however, the "particular part of the property" is the entire project.  *See, e.g.*, *Toll Bros. v. OneBeacon Ins. Co.*, No. G042196, 2011 WL 883000, at *7 (Cal. Ct. App. Mar. 15, 2011) (affirming trial court's finding that "the entire operation is the general contractor's 'particular part' of the property."); *W. Heritage Ins. Co. v. Cannon*, No. 13-CV-0204-TOR, 2014 WL 3697806, at *7 (E.D. Wash. July 24, 2014) (where insured was hired to build entire home, insured's work comprised the entire house building project and "that particular part" referred to the entire project); *Schneider Equip., Inc. v. Travelers Indem. Co. of Ill.*, No. CV 04-1482-HA, 2005 WL 1565006, at *6 (D. Or. June 29, 2005) ("the majority of other jurisdictions interpreting analogous exclusions have held that the language 'that particular part of any

-15-

property' includes the entire piece of property on which the insured was working"). Here, AWC was the general contractor responsible for construction of the pump house and installation of both the turbine/generators and other major electrical and mechanical equipment. All of the property damaged alleged was to the turbine/generators and the pump house. The "particular part" of the property on which AWC was working encompasses both the turbine/generators and the pump house, including all equipment and structures that constitute part of the pump house.

For exclusion E(5) to apply, the property damage must also "arise out of" AWC's operations on the property. Although exclusions are generally construed narrowly, *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648, 73 P.3d 1205, 1213 (2003), *as modified on denial of reh'g* (Sept. 17, 2003), California courts interpret the term "arising out of" broadly. *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 262, 141 Cal. Rptr. 3d 649, 673 (2012), *as modified on denial of reh'g* (June 12, 2012). As used in various types of insurance provisions, including exclusions, the term "links a factual situation with the event creating liability and does not import any particular standard of causation or theory of liability into an insurance policy." *Id.* The term is generally understood to mean "'originating from[,]' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having connection with.'" *Davis v. Farmers Ins. Grp.*, 134 Cal. App. 4th 100, 107, 35 Cal. Rptr. 3d 738, 744 (2005) (citing *Fibreboard Corp. v. Hartford Accident & Indemnity Co.*, 16 Cal. App. 4th 492, 503-04, 20 Cal. Rptr. 2d 376 (1993)). The property damage at issue clearly flows from AWC's work on the property, and the "arising out of" clause of the exclusion is therefore satisfied.

### 2.    Exclusion E(6)

The National Union Policy also does not apply to Property Damage to "that particular part of any property that must be restored, repaired, or replaced because [AWC's] work was incorrectly performed on it if the Property Damage arises out of those

-16-

operations."  National Union Policy at ¶ E(6).  National Union asserts that Exclusion E(6) applies because "the damages arise solely from Archer's defective workmanship during the course of construction of the Project, including the construction of the pump house and the allegedly improper assembly and installation of the turbine/generators."  MSJ at 21.  National Union is correct.

AWC contends that, because the Water Authority alleges a number of theories as to the cause of damage to the turbine, and because there are factual disputes about whether an act of AWC caused the damage, it cannot be determined at the summary judgment stage whether the E(6) exclusion applies.  Opp. at 21-22.  In the Underlying Suit, AWC asserted that GE/Andritz's faulty work, not AWC's, was responsible for the damage.  The salient question, however, is not whether AWC's work was actually faulty or caused the damages.  The question is whether the National Union Policy would have covered the damages at issue had the Water Authority prevailed in the Underlying Suit against AWC, not whether AWC would have been able to prevail at trial.

While the Water Authority may assert multiple theories as the cause of the property damage, all of the claims against *AWC* assert that the property damage was caused by AWC's work, and occurred on the particular part of the property where AWC was working.  Had it been determined that AWC's work was not faulty, there would be no need for indemnification, because AWC would not ultimately have been liable in the Underlying Action.  Because the Water Authority *alleged* that the property damage was the result of AWC's incorrectly performed work, and the allegations in the Underlying Action are the basis upon which the Court assesses National Union's liability for the settlement, Exception E(6) applies to coverage of Property Damage that was alleged to be the result of work that was performed incorrectly.  Where an insurer would not have been liable for coverage of the claims brought in a suit, it is not liable for a settlement of those claims.  *See Foremost Ins. Co. v. Fick*, 930 F.2d at 27; *Everett Associates, Inc. v. Transcon. Ins. Co.*, 159 F. Supp. 2d at 1207.

-17-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In sum, both Exclusion E(5) and Exclusion E(6) preclude indemnification of the settlement under the National Union Policy.

## IV.
## CONCLUSION

In light of the foregoing, Defendant National Union's motion for summary judgment is **GRANTED**.  All scheduled dates and deadlines are VACATED.

**IT IS SO ORDERED.**

DATED:  March 31, 2015

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

-18-